48 CCPA
## Application of Paul COHEN and Thomas A. Taverna.

### Patent Appeal No. 6673.

United States Court of Customs and Patent Appeals.

July 12, 1961.

Miles D. Pillars, Washington, D. C. (Robert D. Spille, Harold L. Stults, and Curtis, Morris & Safford, New York City, of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

MARTIN, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the examiner of claims 12 and 13 of appellant's application for a patent on a method and apparatus for making and using thin flexible plastic garment bags.

"12. The method of making and applying individual garment bags to articles of clothing hanging on garment hangers, each garment bag being open at the bottom and closed at the top so that it may be pulled downwardly onto the garment, comprising: the steps of, ▮ heat sealing a continuous flat tube of thin heat-sealable transparent plastic film along pairs of lines generally transverse to the tube length and spaced apart therealong approximately the length of the garment bags being made, each pair of lines of heat sealing comprising a first sealed portion extending upwardly and inwardly at less than 90° from one side edge of the tube toward but stopping short of the center line of said tube and second sealed portion extending from the opposite

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of ▮ Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

side edge of said tube at the same transverse zone and at a similar angle inwardly and upwardly and stopping short of the center line of said tube, the unsealed space between the inner ends of said sealed portions being wide enough for the hook of a garment hanger to pass through, said sealed portions lying generally parallel to the top shoulders of a garment hanger positioned with its hook extending through said unsealed space, [2] perforating said tube directly above each of said heat sealed portions to provide a transverse tear-off line which intersects a hanger hook which is to extend through said unsealed space, said tear-off line comprising lines of perforation extending respectively from the opposite side edges of said tube to permit the complete severing of the tube at said tear-off line, and [3] winding said tube into a roll; and, the steps of, [4] mounting said roll with the garment bag portion constituting the leading end of said tube being positioned above the zone where a hanger with an article of clothing thereon is to be supported by its hook, [5] supporting a garment upon a hanger hanging from an upright support projecting from below with the garment being free of obstructions above it and at its sides, [6] unwinding said roll and drawing the end bag thereof downwardly over the hanger and garment thereon, the hook of the hanger being passed through the unsealed opening between the inner ends of said sealed portions at the top of the bag, and [7] tearing the end bag from the roll solely along the lines of perforation to completely separate the bag from said tube with the clothing therein.

"13. In equipment for applying garment bags to garments, the combination of, [8] an upright support having hanger supporting means at the upper end thereof to support a garment hanger with a garment thereon while permitting the garment to be free of obstructions from the top and sides, [9] a convenient-to-handle supply of garment bags comprising a continuous flat tube of thin heat-sealable plastic film wound lengthwise into a roll, said tube being divided into a plurality of separable garment bag portions the top of each of which is interconnected with the bottom of the garment bag portion which is wound beneath it on the roll by an interconnecting portion which comprises an array of perforations providing a tearoff portion generally transverse of the side edges of the tube, said roll being adopted to be rotatably mounted so that said tube may be unwound from the roll by pulling in a downward direction upon the outer free end of the tube, each garment bag portion having a pair of heat-sealed lines extending respectively from the opposite side edges of the tube and each extending upwardly and toward the center line of the tube at the same angles from the respective side edges but stopping short of said center line whereby the two layers of the tubes are sealed together along the heat-sealed lines to form the top of the garment bag portion with the top edge portions substantially parallel to the top shoulder lines of a garment positioned upon a hanger within a garment bag formed by the garment bag portion, said heat-sealed lines having an opening between their adjacent ends through which the hook of a garment hanger may extend, the two layers of the tube lying against each other but not being connected together other than along said heat-sealed lines and at their side edges where they are integral, [10] means mounting said roll for unrolling with the free end of the

tube being positioned substantially about a garment supported by a hanger upon said hanger-supporting means, whereby the tube may be unrolled by a downward pulling movement upon the garment bag portion constituting the leading end of the tube while said garment bag portion is being drawn over a garment supported upon a hanger which is held by said hanger supporting means, and the center top portion of the hanger is pushed through the opening between the ends of the heat-sealed lines, and whereby the garment bag portion may then be completely separated from the tube along said perforations to provide a garment bag upon the garment and with the end of the tube presenting the next garment bag portion for application to another garment."[2]

The references relied on by the examiner and the board are:

| La Bombard et al. | 1,803,712 | May 5, 1931 |
| Blessing | 2,479,552 | Aug. 23, 1949 |
| Denton | 2,609,983 | Sept. 9, 1952 |
| Blessing | 2,639,566 | May 26, 1953 |
| Piazze | 2,759,648 | Aug. 21, 1956 |

As the claims point out, appellant's invention relates to a method of making and applying individual garment bags to articles of clothing hanging on garment hangers, and to apparatus by which the method can be practiced. It is contemplated that the method and apparatus would be used by dry cleaning establishments to protect freshly cleaned garments before and after they have been delivered to the customer.

Appellant's method involves two groups of steps. Steps [1], [2] and [3] of claim 12 are to be carried out at some central factory, while steps [4] through [7] are to be performed at the point of ultimate use in a dry cleaning establishment.

Appellant starts with a continuous flat tube of a thin flexibe heat-sealable plastic film such as polyethylene, and in step [1], the layers of film are heat-sealed together at regular intervals along pairs of strips, each strip extending upward and inward from a tube edge toward but not meeting another strip extending in like manner from the opposite edge. Each pair of sealed strips will eventually become the shoulder end of a garment bag and the hook of a garment hanger will be passed through the unsealed space between the inner strip ends. In step [2], the tube is perforated directly above and along each pair of shoulder strips,[3] and in step [3], the heat-sealed perforated tube is wound into a roll which is sent to the dry cleaner.

In steps [4] to [7], the roll is mounted so that the flat tube can be unwound and its open leading edge pulled down over a garment on a hanger dependent from an upright support until the hanger hook passes through the neck opening between the inner ends of the first pair of shoulder strips. Thereupon, the end bag is torn at the perforation lines from the remainder of the roll.

Apparatus claim 13 recites the combination of [8], an upright support from which the garment depends on its hanger, [9] a roll of interconnected flat plastic garment bags, formed as discussed supra in steps [1] to [3] of claim 12, and [10], means for mounting the roll above the support so that the open leading end of the tube can be unwound and pulled down over the garment on its hanger, and the end bag separated at the perforation lines from the remainder of the roll.

La Bombard et al. disclose a method of making paper garment bags by gluing together two continuous flat strips of paper along both edges and along pairs

---

2. The numbers do no appear in the claims but have been inserted to aid in the discussion which follows.

3. The specification recites connection of inner ends of the perforation lines by a slit in each film layer. This is not a claim limitation.

of slanted shoulder lines spaced at regular intervals. Thereafter, individual bags are severed from the glued flat tube by cutting above and along each glued shoulder line as well as straight across at the neck line. A neck opening between the inner ends of the glued shoulder lines accommodates the hanger hook. In use, a dry cleaner is expected to take a single complete bag from the stack thereof.

The Blessing patents both disclose a machine to be used in a dry cleaning establishment. A garment on a hanger is positioned on a slanted plate with the hanger at the top, and a flat paper tube long enough to cover the garment is drawn down from a roll so that the tube partially envelops the garment. The tube is severed from the roll by cutting, the upper tube corners are folded and stapled or taped to conform to the shoulders and neck line of the garment, and the completed bag is drawn further over the garment and hanger until the hanger hook protrudes from the top of the bag.

Denton discloses a machine similar to the Blessing machine and designed for use by a dry cleaner. A flat paper tube is pulled down from a roll partially over a garment on a hanger suspended from the top of a vertical support rod. As in Blessing, the tube is severed from the roll by cutting, the top corners are folded and stapled, and the completed bag is drawn further down into place over the garment hanger.

It is noted that both Blessing and Denton contemplate producing garment bags of varying lengths to fit different types of garments.

Piazze discloses a method of dispensing and using bags made of a thin flexible plastic film such as polyethylene, the material suggested by appellant in his method and apparatus. Piazze starts with a flat plastic tube with "infolded sides" or "bellows fold formations." The tube is sealed together along spaced transverse strips and provided with a perforated transverse tearing line adjacent and behind each strip seal. A center slit of substantial width is provided in each tearing line. The tube is then wound into a supply roll and delivered to the point of ultimate use where it is mounted in a dispensing cabinet so that the open leading end of the tube can be drawn up toward a filling spout until a hook catches the center slit of the tearing line which is below the strip seal. Further upward pull of the tube results in tearing off the end bag, leaving it in final condition for filling at the spout. The nature of the merchandise to be placed in the bags is not specified by Piazze.

The examiner rejected the claims "as unpatentable over the combination of patents to La Bombard, Blessing and Piazze." The Denton patent was considered as cumulative to Blessing. It appears that the examiner considered La Bombard as a basic reference disclosing garment bag manufacture, and cited Blessing and Denton "only to illustrate that it is conventional to provide garment bag material in strip form as a convenience in the supply of bag material for application to a garment * * *." The examiner appears to have considered it obvious to supply *shaped* bag units, as shown by La Bombard, in connected strip form, in view of the Piazze disclosure.

The board affirmed the examiner generally, stating in part:

"Thus, the question before us is whether, in view of the Piazze concept, it would be obvious (due to the reference disclosure) to one of ordinary skill in the art to supply rolls of preformed garment bags, so that the leading end could be fitted over the usual standard garment hanger and garment held thereon, with tearing of one bag from the other due to appropriately formed perforations, *instead of* providing for completing manufacturing of the roll as in Denton and each Blessing patent, * * *.

"We agree with the examiner that the art makes obvious both this

practice and the advantages thereof * * *."

The board appears to have considered "the Piazze concept" to be manufacture of a roll of interconnected containers in a central factory and shipment of the roll to the user, thus "eliminating the necessity of individual small, inefficient manufacturing machines for each user, as in Denton and Blessing." The board pointed out that both the Piazze patent and appellant's disclosure pertain to the same subject, packaging of merchandise, even though the particular article packaged is different.

The examiner considered certain affidavits presented by appellant and purporting to establish substantial commercial success of the claimed method and copying thereof by competitors, but stated:

"Since the references are considered to plainly show lack of invention in the claims the affidavits are considered to be insufficient to establish the patentability of these claims."

Although the board did not discuss this point, it is well established that evidence of commercial success is to be considered only when the question of patentability is in doubt. In re Jaeger et al., 241 F.2d 723, 726, 44 CCPA 767, 771; In re Busch, 251 F.2d 617, 618, 45 CCPA 766, 769; In re Venner et al., 262 F.2d 91, 96, 46 CCPA 754, 760. Our view of the matter leaves no doubt. We are of the opinion that the appealed claims are not patentably distinguishable over the references. It appears to us that with the teachings• of La Bombard et al., Blessing, and Denton before him, it would be obvious to one of ordinary skill in this art to so modify Piazze as to produce the method and apparatus claimed by appellant.

The concept of using a continuous roll of packaging material in tubular form for hangered garment bags is taught by Blessing and Denton, and that of using a continuous roll of tubular polyethylene for packaging purposes generally is disclosed by Piazze. We see nothing of patentable significance in combining these two teachings to produce a continuous roll of tubular polyethylene for bagging hangered garments in a dry cleaning establishment.

As to the specific features of claim 12, appellant and Piazze begin with a continuous flat tube of material such as polyethylene, and in both situations the layers are heat-sealed at specified intervals. Also in both cases, the tubes are perforated immediately behind the heat-sealed strips as they appear on the rolls into which they are both formed after the aforesaid processing has been completed. In each case the rolls of polyethylene tubes are sent to their respective users, appellant's to a dry cleaner and Piazze's to a concern which fills the bag with some merchandise.

Thus far we find no significant difference. To be sure, the heat-sealed strips of Piazze art transverse while those of appellant are diagonal in order to conform to the configuration of shoulders of garments. However, to one skilled in the garment bag art, such a divergence would be obvious even if La Bombard et al., Blessing, and Denton were not in evidence as teachings of this feature. The difference in the location of the slits we do not think significant. In Piazze, the slit is part of the tearing process; in appellant's process, it is present to accommodate the protrusion of the hook of the garment hanger and is taught by La Bombard et al.

Coming now to appellant's method of applying polyethylene bags to the hangered garments, without discussing each feature, we find nothing which is patentably distinguishable from the methods taught by Blessing and Denton.

The combination of appellant's apparatus, as recited in claim 13, which includes the upright support, the roll of garment bagging material, and the device for mounting the roll so that the open end of the tubular material can be pulled down over the hangered garment,

is all taught by either or both Denton and Blessing. The only difference between appellant's recitation in this claim and those of these references has to do with the severing process. Appellant accomplishes this result by tearing along a perforated line which procedure we find in Piazze; the references accomplish it by cutting the bagging material. The recitation of the features of the processed garment bag material in roll form in this claim is approximately a repetition of the recitation in claim 12 and need not be considered again.

Some point is made by appellant of the fact that:

"* * * The complete concept of the invention encompasses the operations starting at the plant, where the tube is heat-sealed, perforated and wound into a roll, and ending with the completion of the individual garment bags after installation upon the garments."

We agree with the board's observation concerning this matter wherein it stated:

"Thus, as compared to the art above discussed, we are in agreement with appellants' allegation contained on page 4 of the brief:

" 'The important concept of the invention is to partially form a particular garment bag to produce the commercial product, i. e., the rolls which are delivered to the user. The garment bags are not completed until each is installed upon its garment.' "

The last sentence of this paragraph is, however, in our estimation, in error, namely:

" 'This feature is new, and it proved to be the "last step" in solving an important problem.'

"In our opinion, the remaining reference fully discloses the important concept as identified by appellants. Piazze discloses the concept of making bags out of sleeves of polyethylene which is the bag material utilized by appellants. These bags are for packaging merchandise other than clean garments carried by garment hangers. Piazze discloses the well-known fact that polyethylene is heat-sealable. He forms the bags in their individual form by heat-sealing and provides for separation of one bag from the other by a line of perforation. Thus, the important concept pointed out by appellants is present in Piazze although applied to a bag of specifically different form for packaging specifically different merchandise. Thus, appellants' 'last step' has been used prior to appellants in packaging other and different forms of merchandise."

For the foregoing reasons, we are of the opinion that claims 12 and 13 should not be allowed and therefore the decision of the board is affirmed.

Affirmed.